UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


R. THERESA CLEVELAND,

    Plaintiff,

v.

    Case No. 09-11691

    Honorable Patrick J. Duggan

KARYN JEFFERSON and QUEST
DIAGNOSTICS,

    Defendants.

                                   /

## **OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on _March 10, 2010.

PRESENT:     THE HONORABLE PATRICK J. DUGGAN
                    U.S. DISTRICT COURT JUDGE

On May 4, 2009, R. Theresa Cleveland ("Plaintiff"), appearing *pro se*, filed the present lawsuit against Karyn Jefferson ("Jefferson") and Quest Diagnostics ("Quest") alleging employment discrimination on the basis of age and race, retaliation, and breach of contract.[1] On August 4, 2009, the Court granted summary judgment to Jefferson,

---

[1] Plaintiff does not explicitly assert these claims as separately numbered counts. Plaintiff checked boxes on a form complaint for employment discrimination indicating her belief that Quest discriminated on the basis of age and race. (Compl. ¶ 10.) In a separate narrative titled "Complaint," Plaintiff references the at-will employment doctrine and violation of an implied contract. (*Id.*) Finally, in a charge of discrimination filed with the Michigan Department of Civil Rights and the Equal Employment Opportunity Commission, Plaintiff alleged that her termination had been retaliatory. (Quest's Mot. Ex. 17.)

dismissing her from the lawsuit. Presently pending before the Court is a motion for summary judgment filed by Quest on October 9, 2009. At this time, intervening issues regarding discovery have been resolved and the motion has been fully briefed. On February 17, 2010, the Court dispensed with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(e)(2). For the reasons set forth below, Quest's motion is granted.

## I. Background

Plaintiff, an African-American female, began working for Quest in November 1988 at age 29 in a clerical position in Quest's laboratory department. In 1997 Plaintiff transferred to Quest's accounts payable department where she worked until 2001. At that time, Plaintiff's position was phased out and Quest transferred Plaintiff to its billing department as a Customer Service Representative ("CSR") II. Plaintiff remained in that position until the date of her termination on June 28, 2008, at age 49.

In her position as CSR, Plaintiff was disciplined on numerous occasions by her supervisors. Between July 2001 and January 2003, Supervisor Lacy Hollie, an African-American female similar in age to Plaintiff, disciplined Plaintiff on five separate occasions for issues such as Plaintiff's use of visitor parking, instances of inappropriate conduct offensive to coworkers, and intentional disconnection of customer calls for purposes of artificially inflating productivity. Supervisor Beverly Page, an African-American female similar in age to Plaintiff, disciplined Plaintiff for insubordination in May 2005 after Plaintiff refused to perform a particular task.

In July 2005, Quest instituted a monitoring system whereby calls between customers

and CSRs were monitored and scored on a red-yellow-green scale, with red and yellow scores resulting in possible discipline. In 2007 Quest began recording all customer service calls as part of the monitoring system. In May 2007 Supervisor Robin Garcia, a Caucasian female similar in age to Plaintiff, issued Plaintiff a verbal discipline action after one of Plaintiff's monitored calls was scored red by monitor Doraline Belau, a Caucasion female over age 50. In September 2007, Plaintiff received a written discipline action by Garcia for a second call rated red. Then in October 2007, Garcia issued Plaintiff a final warning for a third red-rated call and two yellow-rated calls in a two-week period. In conjunction with this final warning, Plaintiff underwent retraining and Quest required that she demonstrate sustained improvement to avoid termination.

At some point during October 2007, Plaintiff contacted Quest's compliance unit to inquire about the discipline to which she had been subject, to complain about unfair treatment, and to request an investigation. The compliance unit responded to Plaintiff's inquiry in November 2007 with a statement regarding Quest's policies. No further discussions or inquiries ensued.

In March 2008, Plaintiff received her annual performance review for the calendar year of 2007. Therein Garcia gave Plaintiff a "quality" rating of unsatisfactory and an overall rating of "development needed." Finally, on June 28, 2008, Garcia and Quest Manager Cheryl Gawne terminated Plaintiff's employment after another monitored call was found to be unsatisfactory under company guidelines.

On September 2, 2008, Plaintiff filed charges of discrimination with the Michigan Civil Rights Department and the Equal Employment Opportunity Commission ("EEOC").

The Michigan Civil Rights Department dismissed Plaintiff's complaint on January 27, 2009, and the EEOC issued a right to sue letter on March 30, 2009. As previously indicated, Plaintiff filed the present lawsuit on May 4, 2009, and Quest filed the pending motion on October 9, 2009.

On October 13, 2009, Plaintiff filed a "Motion to Compel" and a "Motion for Contineation [sic] of Wrongful Termination Case." In the motion for continuation, Plaintiff requested that the Court allow this case to proceed to trial despite Quest's motion for summary judgment. Plaintiff also asserted, among other things, that evidence sought in the motion to compel would allow her to prove her case. Given the contents of the motion for continuation, the Court is construing it as a response to Quest's motion for summary judgment.

Meanwhile, the Court referred Plaintiff's motion to compel to Magistrate Judge Virginia M. Morgan. Subsequently, additional discovery issues arose and Magistrate Judge Morgan resolved all of the pending discovery issues by order dated January 6, 2010. In light of Magistrate Judge Morgan's resolution of the discovery issues, the Court offered the parties an opportunity to submit supplemental briefing on the motion for summary judgment. Plaintiff filed a supplemental response on February 4, 2010, and Quest replied on February 12, 2010.[2]

---

[2]In the event Plaintiff filed a supplemental response, the Court instructed Quest to file its reply within seven days thereafter. In its reply, Quest asserts that its February 12, 2010, reply is timely because Rule 6 of the Federal Rules of Civil Procedure allows exclusion of intervening Saturdays and Sundays when computing time periods of less than 11 days. The Court notes that Quest refers to an outdated version of Rule 6; as of December 1, 2009, intervening Saturdays and Sundays are never excluded for the purposes of computing time periods, regardless of duration. Fed. R. Civ. P. 6(a)(1)(B). This means that Quest's reply was filed one day late and the Court

4

**II. Standard of Review**

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. Furthermore, "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading . . . ." Fed. R. Civ. P. 56(e)(2).

**III. Employment Discrimination and Retaliation**

Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits an employer from discriminating "against any individual with respect to his compensation, terms,

---

will not consider the reply in deciding the motion. Nonetheless, Quest remains entitled to summary judgment.

5

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Meanwhile, the Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Both Title VII and the ADEA also prohibit employers from retaliating against individuals who oppose such discriminatory practices. 29 U.S.C. § 623(d); 42 U.S.C. § 2000e-3(a).

Plaintiffs can prove employment discrimination and retaliation claims with direct or circumstantial evidence. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400-01 (6th Cir. 2009). Absent direct evidence, such claims are subject to the *McDonnell Douglass* burden-shifting analysis.[3] *Id.* Pursuant to this approach, a plaintiff must first establish a prima facie case of discrimination or retaliation. *Id.* If the plaintiff establishes a prima facie case, it is presumed that the employer unlawfully discriminated or retaliated until the employer articulates some legitimate, non-discriminatory, non-retaliatory reason for the employment decision. *Id.* If the employer makes such a showing, the plaintiff must then prove that the articulated reason is false and offered as pretext for the unlawful employment action. *Id.*; *see also Imwalle v. Reliance Med. Prods. Inc.*, 515 F.3d 531, 543-44 (6th Cir. 2008). In the present case, Quest argues that Plaintiff cannot establish a

---

[3]"Direct evidence is that evidence which, if believed, requires no inferences to conclude that unlawful retaliation was a motivating factor in the employer's action." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543-44 (6th Cir. 2008). Plaintiff did not submit any direct evidence of discrimination or retaliation.

6

prima facie case and, even if she could, she cannot prove that Quest's legitimate, non-discriminatory, non-retaliatory reason for termination is pretext.

**A. Discrimination**

To establish a prima facie case of discrimination—whether age or race—Plaintiff must demonstrate, among other things, that she was either replaced by a person outside the protected class or treated differently than similarly situated, non-protected employees. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) (Title VII discrimination); *Mitchell v Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004) (ADEA). In her complaint narrative, Plaintiff appears to assert that Quest applied its call monitoring and discipline policies to her before disclosing the policies and that Quest did not impose the policies equally to all employees. In response to Quest's motion for summary judgment, however, Plaintiff failed to submit evidence in support of such claims. Instead, Plaintiff's supplemental response lists pieces of evidence without explaining how those items will support her claims and without attaching any of the evidence to the response. Such a submission is insufficient to create a genuine issue of material fact for trial that similarly situated, non-protected employees were treated differently.

In the absence of any record evidence to support her claim that she was treated differently than similarly situated, non-protected employees, Plaintiff must establish that she was replaced by either a younger or non-African-American employee. At the end of her supplemental response, Plaintiff asserts that two white females under the age of 37 were hired in Quest's billing department between January 2007 and June 2008. Again,

however, Plaintiff fails to submit evidence of this claim and, even if she did, such an allegation fails to establish that Plaintiff was *replaced* by one of those employees. Therefore, Plaintiff has failed to present evidence necessary to establish a prima facie case of discrimination and Quest is entitled to summary judgment on those claims.

**B. Retaliation**

As part of a prima facie case of retaliation, Plaintiff must establish that Quest committed an adverse employment action after learning that she engaged in protected activity. *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008). Quest argues that Plaintiff's inquiry to the compliance unit in October 2007 does not qualify as a protected activity and, if it did, neither of the people involved in Plaintiff's termination—Garcia and Gawne—had knowledge of that inquiry. Again, Plaintiff failed to present evidence in opposition to these arguments. Therefore, Quest is entitled to summary judgment on Plaintiff's retaliation claim.

**IV. Breach of Contract**

Plaintiff's complaint narrative alleges that Quest "has consistently and systematically violated employee rights under the at-will doctrine by the implied contract." Plaintiff has neither explained this claim nor submitted evidence in support thereof. Therefore, Quest is entitled to summary judgment on this claim.

**V. Conclusion**

By failing to submit affidavits or other evidence in support of her response to Quest's motion, Plaintiff failed to establish a genuine issue of fact requiring resolution at trial.

Accordingly,

**IT IS ORDERED** that Defendant Quest Diagnostic's Motion for Summary Judgment is **GRANTED**.

A judgment consistent with this opinion shall issue.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
R. Theresa Cleveland
15300 Spring Garden
Detroit, Michigan 48205

George Mesritz, Esq.